R. J. HOWARD, Appellee, v. LOUIS P. BROWN, Appellant.

**DAMAGES: Breach of Contract Without Damages.** No damages,
1 no recovery, though breach of contract is shown.

**DAMAGES: Profits—Certainty.** Profits are recoverable as damages
2, 5 if proximate, natural and certain.

   PRINCIPLE APPLIED: Plaintiff alleged a contract to erect his sawmill outfit on defendant's farm and to saw a large quantity of logs for defendant for $9 per M. plus the slabs and sawdust, defendant to haul the logs to the mill. Plaintiff was to furnish the mill, engine, fuel, supplies, repairs, labor, and haul the outfit to and from the premises. He sawed only part of the alleged quantity, claiming the defendant *refused to haul,* or permit plaintiff to saw, the balance. Plaintiff sued to recover what he would have made had he been permitted to saw the balance of the logs, contenting himself by testifying that $2.00 per M. was the cost of operating the outfit, thereby making no showing as to the nature, extent, or value of the fuel, supplies, repairs, and labor necessarily employed in operating the outfit, or the depreciation thereon. *Held,* showing too indefinite to support a recovery of damages. *Held,* under point 5, damages were recoverable if made sufficiently certain.

**APPEAL AND ERROR: Affirming Verdict by Subtracting Excess—**
3 **Certainty.** The verdict being excessive, the court cannot cure the error and affirm by subtracting the excess, unless such excess s readily ascertainable from the record.

TRIAL: Instructions—Aptness—Surplusage. Surplusage, meaning-
4 less matter, tending to confusion, should be omitted from instruc-
tions.

DAMAGES: Profits—Certainty.
2, 5

DAMAGES: Avoidable Consequences—Trespass—Duty Imposed by
6 Contract. The rule that "one cannot recover for avoidable
consequences" does not require an injured party to (1) commit
a trespass or (2) to perform a duty imposed by contract on the
one seeking to avoid the damages.

PRINCIPLE APPLIED: Plaintiff (under facts of point 2
above) held not under obligation to "haul" the logs himself,
in order to lessen the damages.

*Appeal from Polk District Court.*—HON. LAWRENCE DE GRAFF,
Judge.

TUESDAY, OCTOBER 6, 1914.

REHEARING DENIED TUESDAY, JANUARY 19, 1915.

ACTION at law to recover damages for an alleged breach
of contract. Verdict and judgment for plaintiff and defendant
appeals.—*Reversed.*

*A. M. Miller* and *Clark, Byers & Hutchison,* for appellant.

*Clifford V. Cox,* for appellee.

WEAVER, J.—The plaintiff owns and operates a portable
sawmill for the manufacture of logs into lumber. He claims
that in the spring of 1911, he entered into an oral contract
with defendant to set up his mill on defendant's farm and saw
all the cottonwood logs thereon, for which service plaintiff was
to receive $6.00 per thousand feet of lumber sawed and in
addition thereto was to have and receive all the slabs and
sawdust, and that defendant agreed to haul the logs to the
mill as fast as they were needed. Plaintiff further claims
that defendant did furnish and plaintiff did saw logs under

said contract to the amount of 46,000 feet, for which he received full payment at the contract price; but although there were other logs on the farm to the amount of 254,000 feet cut and prepared and ready to be hauled, the defendant refused to haul or deliver them to the mill or allow plaintiff to saw them. He asks to recover as damages the full contract price to which he would have been entitled for sawing the logs had they been delivered, together with the value of the slabs and sawdust which would have been so produced, less only the actual sum which he would have expended in doing the work on his part. The defendant admits that he agreed to pay plaintiff $6.00 per thousand for the sawing and to give him also the slabs and sawdust, but denies that he undertook to furnish any particular amount or number of logs or that he agreed to haul them except only at such times when he could conveniently or reasonably spare his men and teams from other work on the farm. Defendant further alleges that plaintiff agreed that he would himself haul the logs and supply them to the mill with his own team whenever defendant was unable to attend to it and defendant agreed to pay therefor and if there was any failure in the supply of logs he avers plaintiff was himself responsible for it. It is also contended that the agreement between the parties was abandoned by mutual consent. By way of reply plaintiff denies the averments of the answer.

The jury found for plaintiff to the full extent of the claim above stated, to which was added the further sum of $89.00 upon an item of team hire over which there is no dispute.

I. Defendant pleaded by way of counterclaim that at the time of entering into the contract, plaintiff agreed to enter upon the performance thereof immediately; but in violation of such agreement he delayed the beginning of the work an unreasonable length of time, neglected to haul the logs needed to keep the mill in operation, removed his engine from the prem-

1. DAMAGES: breach of contract without damages.

ises and used it in running a threshing machine for others and later took away the remainder of his outfit, on account of all of which defendant demands damages from plaintiff in the sum of $500.00.

At the close of the testimony, this counterclaim was withdrawn from the jury upon plaintiff's motion and upon this ruling error is assigned. Upon the record as made, the ruling was correct; for while there was testimony tending to sustain defendant's version of the contract and to show that plaintiff was himself the first to violate its obligation, defendant seems to have overlooked the necessity of proving that he sustained damage thereby.

2,5. DAMAGES: profits: certainty.

II. Objection is made to the court's instruction upon the measure of plaintiff's damage, if any. On this subject the court told the jury:

"6. If you find that the plaintiff in this case is entitled to recover for the breach of the contract as claimed and alleged by the plaintiff in his petition you will allow him such sum as would equal the contract price of sawing the number of feet of logs if any which he was entitled to saw under the contract and for which plaintiff has not been paid and in addition thereto the reasonable value as shown by the evidence of the slabs and sawdust produced from sawing said logs if any and from this sum you will deduct such an amount as is disclosed by the testimony which measures the actual cost of operation of the mill and the sawing of such logs, if any as you find he was entitled to saw, and such sums if any the plaintiff received from the defendant in other work during the existence of the contract and from any other person for work done during the existence of the contract as shown by the testimony."

If we assume that the work to be done under the contract was of a kind to justify a recovery of damages by plaintiff equal to the anticipated profits, such recovery could right-

fully be had only by proof of facts upon which the prospective profits might be ascertained with some reasonable degree of certainty. Nothing should be left to mere conjecture. The contract affords no such measure, though it does afford one item or factor in the problem. Over against this must be set the many items of expense, cost and liability which performance of the contract involves on the part of the person claiming damages for its non-performance by the other party. In this case the plaintiff, under the contract even as he claims it, must be considered as required to furnish the mill he uses, as well as the engine, the fuel and the motive power, and to haul the outfit to and from the premises. He puts in his own time and labor in overseeing and managing the operation of the mill and, assuming him to be the expert which his testimony indicates, this must be a very material item. He employs all the needed help. There is inevitable wear and tear and depreciation. Repairs and supplies are a constant factor in the use of all machinery. Without considering all these elements, no comparison between contract price and cost or expense will produce anything like a true showing of profits; but concerning them the record shows nothing except a general statement by plaintiff that he employed three to five men to assist him in running the mill and that the cost of operating it was two dollars per thousand feet. To submit the question of probable profits in a contract never performed, upon a showing so vague and indefinite as this, is quite sure to lead the jury into the realm of conjecture and speculation with resulting miscarriage of justice, a danger, we may add, which seems to be well illustrated by the verdict in this case. For if the verdict is to stand it must be on the theory that, of plaintiff's agreed compensation (including the slabs and sawdust) of about $9.00 per thousand, there was a prospective net profit of $7.00 per thousand, and although he has never sawed a single foot of the 254,000 feet of logs, defendant is still bound to pay him the full agreed cash price of the work never performed, and in addition

thereto a large fraction of the assumed value of the slabs and sawdust never produced. It is, of course, true that if defendant made such an improvident contract, the court in this action has no authority to relieve him; but the patent absurdity of it is sufficient to justify the court in scrutinizing very closely the showing on which such result is predicated. The burden was upon the plaintiff in this respect and we think it must be said he failed to make a showing which entitled him to the instruction given by the court.

III. The point is made that upon any allowable theory of the case the verdict returned is excessive, and in this view we concur. A part of what is said in the preceding paragraph has direct application here, but it is unneces-

3. APPEAL AND ERROR: affirming verdict by subtracting excess: certainty.

sary to repeat it. We discover no evidence which would have sustained a special finding of the quantity of unsawed logs to have been more than 234,000 feet, while the jury apparently computed its finding on the basis of 254,000 feet; and it further appears quite certainly that the jury did not follow the court's direction to reduce the amount of damages by the amount which plaintiff earned in using his engine in the service of other parties during the period when he claims he was waiting for defendant to haul logs. Again it appears that plaintiff fired his engine with the slabs and also used them for fuel in his cook-house and had he completed the job, about one-third of the slabs produced would have been thus consumed; and yet under the instructions the jury could and apparently did permit him to recover the full value of all the slabs. Appellee suggests his willingness to remit from his judgment the excess, if any, over what he ought to recover. If the only question before us was the amount of plaintiff's recovery and the excess was readily ascertainable, we could very well thus end the litigation; but we have already pointed out another error, the elimination of which on a retrial may lead to different results. The case as now presented is by no means clear and satisfactory and we are forced to the conclusion that the

real merits will be better ascertained and the rights of both parties better defined and vindicated by remanding the case for another hearing in the usual manner.

4. TRIAL: in-
structions:
aptness: sur-
plusage.

In another paragraph of the charge the court, after reciting the several facts which plaintiff must prove to entitle him to recover, adds:

"If you find affirmatively by a preponderance of the evidence as to each of the foregoing propositions then your verdict will be for the plaintiff; if you fail to so find as to each of the foregoing propositions then your verdict will be for the defendant for breach of the contract as claimed and alleged by plaintiff in his petition as amended."

All that part of the quoted language following the word "defendant" appears to have no logical connection with that which precedes it and serves to confuse or obscure the meaning of the paragraph of which it is a part. It is so clearly an inadvertence, however, that were the record otherwise free from error we should be inclined to hold it to be without material prejudice to the defense; but in view of other exceptions which we think necessitate a reversal, we call attention to the unsatisfactory form of the instructions at this point to avoid a repetition of the error when the case shall again be tried.

IV. In remanding the case it is probably best that we mention the contention of the appellant that the issues as they now stand do not present a case for the recovery of expected

2, 5. DAMAGES:
profits: cer-
tainty.

profits, and that in any event the jury should have been told that plaintiff was bound to use reasonable diligence to avoid loss or damage by reason of defendant's alleged default and to that end, when defendant failed to haul the logs as agreed (if he did so fail), it was plaintiff's duty to haul them to the mill himself, and having failed to do so, his recovery of damages would be limited to the reasonable cost or expense of such hauling.

Mere speculative profits are, of course, not recoverable, but profits which are within the contemplation of the parties and certain of ascertainment may be recovered for breach of contract. *Roper v. Milburn* (Neb.), 142 N. W. 792; *Pugh v. Jackson,* 154 Ky. 772; *Richmond v. R. R. Co.,* 33 Iowa 422, 432; *Hichhorn v. Bradley,* 117 Iowa 130.

If, then, plaintiff shall be able to show a valid contract with defendant by which plaintiff for a definite stated compensation was to take his mill to defendant's farm and there saw for the defendant a definite or ascertainable number or quantity of logs to be delivered at the mill by defendant, and that pending the performance of that agreement and before the work was completed defendant ceased and refused to deliver the remainder of the logs, thus compelling plaintiff to abandon the job, we can see no reason why, under the rule of the authorities above cited, he may not recover damages upon the basis of the profits, if any, which he would have earned in the performance of the remainder of his contract, providing, of course, that such profits are found to be reasonably ascertainable by competent evidence. Certainly, upon a bare statement of the case it cannot be said as a matter of law that the ascertainment of the profit in the contract is impossible or even difficult. Whether that measure or some other is to be applied will depend, of course, upon the evidence as it may be produced upon the trial.

Nor can we agree with appellant that plaintiff under such circumstances would be required to minimize his damages, if any, by hauling the logs himself. The rule cited in support of this contention is a familiar one, but it is 6. DAMAGES: avoidable consequences: trespass: duty imposed by contract. not applicable in a case of this character. The logs were the property of the defendant and upon his premises, and if it be found true that he agreed to deliver them at the mill and failed to do so, we think there is no rule or principle of law which would require plaintiff to invade defendant's timber and do the work which defendant had undertaken to do. He had con-

tracted to saw logs which were to be delivered at the mill and he was required to do no more than to be on hand at the mill prepared, ready and willing to receive and saw the logs. All this is upon the theory of the plaintiff's claim that defendant was to deliver the logs ready for the saw. On the other hand, if it should be found, as defendant claims, that plaintiff undertook to haul the logs for a stated compensation whenever defendant could not conveniently deliver them, a very different rule would apply and there can be no recovery of damages.

For reasons stated, a new trial must be had and for that purpose the judgment of the district court is—*Reversed.*

LADD, C. J., EVANS and PRESTON, JJ., concur.